**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                          **1:16-cr-126-WSD**

**OLU KANNI SANYAOLU,**

                                    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Olu Kanni Sanyaolu's ("Defendant") Motion *in Limine* to Exclude Hearsay Testimony Regarding Fingerprint Evidence [82] ("Motion").

## I.    BACKGROUND

On April 12, 2016, a grand jury in the Northern District of Georgia returned a three-count Indictment [1] against Defendant, charging Defendant, in Count One, with knowingly procuring, contrary to law, naturalization and citizenship in the United States in violation of 18 U.S.C. § 1425(a).  The Government later dismissed Counts Two and Three.  ([26], [27]).

On or about April 8, 1998, Defendant, who is a native of Nigeria, was granted asylum in the United States.  In 2009, Defendant petitioned for citizenship

through naturalization, and, on or about July 20, 2009, citizenship was granted. In March 2014, Defendant traveled to Nigeria. On his way back, on April 21, 2014, Defendant arrived at the Houston International Airport. In the Customs inspections area, an Automated Fingerprint Identification System ("AFIS") examination of Defendant determined that he was linked to two fingerprint identification numbers—one number for him, and another for Kunle Olukanni. The Olukanni immigration file shows that, in 1992, Mr. Olukanni applied for asylum in New York. Asylum was denied in September 1994. Mr. Olukanni's wife then petitioned for adjustment of his status, and Mr. Olukanni filed a concurrent application to register permanent residence or to adjust status. The applications also did not result in a grant of lawful immigration. As a result, on July 23, 1998, Mr. Olukanni was ordered to be deported.

On June 17, 2015, Homeland Security Fingerprint Specialist Dean Roan issued a laboratory report regarding comparisons of fingerprint cards, derived from the Alien files ("A-Files")[1] for Defendant and Mr. Olukanni. The three cards contained fingerprints bearing the names Olu Kanni Sanyaolu, dated May 31, 1997; fingerprints bearing the name Kunle Olukanni, dated July 27, 1995; and fingerprints bearing the name Olukanni, dated August 29, 1992. These

---

[1] An A-File is "a compendium of documents which tracks an alien's status." See United States v. Agustino-Hernandez, 14 F.3d 42, 43 (11th Cir. 1994).

fingerprints were also compared against fingerprints bearing the name Olu Kanni Sanyaolu, dated April 20, 2016, and the May 31, 1997 fingerprints bearing the name Olu Kanni Sanyaolu. Mr. Roan determined that the fingerprint impressions on the cards were made by the same person.

On April 6, 2017, the Government notified the Court that Mr. Roan would not be available to testify at trial, and that Thomas Liszkiewicz, a fingerprint specialist who "verified Mr. Roan's results by completing an independent examination of the fingerprints," will testify at trial. Mr. Liszkiewicz conducted two examinations of fingerprint evidence. In the first examination, Mr. Liszkiewicz analyzed and compared the three fingerprint cards derived from the A-Files for Defendant and Mr. Olukanni. In the second examination, Mr. Liszkiewicz compared fingerprints taken from Defendant in April 2016, upon his arrest by HIS Special Agent Gary Thiel, and one of the three fingerprint cards previously examined. Mr. Liszkiewicz determined that the fingerprint impressions were made by the same person.

On May 25, 2017, Defendant filed his Motion. In it, he seeks to exclude from trial hearsay testimony regarding (i) the derivation of the fingerprints compared, and (ii) the alleged matches of fingerprints determined by automated systems.

## II. DISCUSSION

### A. Derivation of Fingerprints Compared

Defendant moves to exclude, as hearsay, testimony regarding the persons from whom the fingerprints were obtained or to whom the fingerprints belong. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is inadmissible unless the statement is not hearsay as provided by Rule 801(d) or falls into one of the hearsay exceptions." United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010) (quoting United States v. Baker, 432 F.3d 1189, 1203 (11th Cir. 2005)); Fed. R. Evid. 802.

#### 1. April 2016 Fingerprints

The Government will seek to introduce at trial fingerprints taken from Defendant upon his arrest by HIS Special Agent Gary Thiel in April 2016. The Government represents that Agent Thiel will testify at trial that he obtained the fingerprints from Defendant. Agent Thiel's testimony regarding the April 2016 Fingerprints is not hearsay and will be permitted at trial. See Fed. R. Evid. 801.

## 2.    Fingerprint Cards Contained in A-Files

The Government also will introduce at trial three fingerprint cards that were derived from the A-Files for Defendant and Mr. Olukanni.  The Government represents that it will present testimony from a records custodian for these fingerprint cards.  The Government argues that the fingerprint cards from the A-Files are admissible under the public records exception, Fed. R. Evid. 803(8), to the rule against hearsay.[2]

Under Rule 803(8) of the Federal Rules of Evidence, a "record or statement of a public office" is not excluded as hearsay if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

---

[2]    The Government also contends that the fingerprint cards from the A-Files may be admitted under the business records exception, Fed. R. Evid. 803(6).  Because the Court concludes that, under binding Eleventh Circuit authority, the A-Files are admissible under the public records exception, the Court need not determine whether they are also admissible under the business records exception.

Fed. R. Evid. 803(8).  Public records may be authenticated by showing that they are "from the public office where items of [that] nature are kept."  <u>Id.</u> 901(b)(7).

The Eleventh Circuit has consistently held that "immigration files contained in an A-File . . . constitute admissible hearsay, because the 'admission of routinely and mechanically kept I.N.S. records . . . does not violate Rule 803(8)(B).'" <u>Caraballo</u>, 595 F.3d at 1226 (quoting <u>United States v. Agustino-Hernandez</u>, 14 F.3d 42, 43 (11th Cir. 1994)) (standard documents from the A-Files of aliens defendant allegedly smuggled into the United States were admissible under hearsay exception for public records and reports).  <u>See also</u> <u>Agustino-Hernandez</u>, 14 F.3d at 43 (documents from defendant's A-file, including a thumbprint on a warrant of deportation, were properly admitted under public records exception where documents were "routinely and mechanically kept" and "were prepared long before the alleged offense"); <u>United States v. Rivera-Soto</u>, 451 F. App'x 806, 807 (11th Cir. 2014) (deportation warrant, contained in immigration file, admissible under public records exception; district court did not abuse its discretion where defendant did not argue that records were so untrustworthy that jury should not have been allowed to consider them, and did not argue that government failed to authenticate the records as kept by DHS); <u>United States v. Torralba-Mendia</u>, 784 F.3d 652 (9th Cir. 2015) (A-File forms that contained alien's name,

photograph, and fingerprints were admissible under public records exception; forms were part of alien's file, filled out and kept by DHS in its regular course of business, and forms were a ministerial, objective observation).[3]

Defendant does not argue that the fingerprint cards at issue here are so untrustworthy that the jury should not be allowed to consider them, and the Court finds that the fingerprint cards obtained from the A-Files for Defendant and Mr. Olukanni may be admitted under the public records exception to the hearsay rule. See Fed. R. Evid. 803(8); Caraballo, 595 F.3d at 1226; Agustino-Hernandez, 14 F.3d at 43. Defendant's Motion to exclude testimony regarding the derivation of the fingerprints compared is denied.[4]

---

[3] In Rivera-Soto, the Eleventh Circuit found that the district court did not abuse its discretion in admitting the defendant's immigration records under the business records exception, including because the district court also admitted the immigration records under the public records exception. Rivera-Soto, 451 F. App'x at 807. Under Federal Rule of Evidence 803(6), a business record is not excluded as hearsay if business records are not excluded as hearsay if they are kept in the course of a regularly conducted business activity, and if it was the regular practice of the business activity to make the records, "all as shown by the testimony of the custodian or other qualified witness, or by certification . . . ." Id. (citing Fed. R. Evid. 803(6)).

[4] The Eleventh Circuit has held further that documents contained in an A-File are non-testimonial in nature and their admission does not violate the defendant's rights under the Confrontation Clause because the documents are "recorded routinely and not in preparation for a criminal trial." United States v. Cantellano, 430 F.3d 1142, 1145 (11th Cir. 2005) (warrant of deportation); see also Caraballo, 595 F.3d at 1228-29 (admission of I-213 form did not violate Confrontation Clause, including because INS used the form primarily to track entry of aliens into

B.     Automated Comparisons

Defendant next moves to exclude hearsay testimony regarding "the alleged matches of fingerprints determined by automated systems." (Motion at 3). In its Response, the Government represents that "it does not intend to introduce evidence of automated comparisons or comparisons made by other non-testifying experts." (Resp. at 6). Defendant's Motion to exclude testimony regarding automated fingerprint comparisons is denied as moot.

**III.    CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion *in Limine* to Exclude Hearsay Testimony Regarding Fingerprint Evidence [82] is **DENIED**.


**SO ORDERED** this 2nd day of June, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

the United States; stating "[t]his routine, objective cataloging of unambiguous biographical matters becomes a permanent part of every deportable/inadmissible alien's A-File. . . . [T]he primary purpose of [agent's] questioning was to elicit routine biographical information that is required of every foreign entrant for the proper administration of our immigration laws and policies.").